IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 24-cr-319 (CRC) |
| | : | |
| v. | : | |
| | : | VIOLATIONS: |
| RANDY VERDUN Sr., | : | |
| | : | 40 U.S.C. § 5104(e)(2)(D) |
| Defendant. | : | (Disorderly Conduct in |
| | : | a Capitol Building) |
| | : | |
| | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | (Parading, Demonstrating, or Picketing in |
| | : | a Capitol Building) |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Randy Verdun Sr., with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

1

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

2

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Randy Verdun Sr. travelled from his residence in Denham Springs, Louisiana to Washington D.C. to participate in events scheduled in Washington D.C. on January 6, 2021, to protest the results of the 2020 presidential election. On January 6, 2021, Verdun attended the former President's "Stop the Steal" rally where he wore a red beanie under a distinct camouflage

baseball cap with an American flag bill, a black leather jacket, and a black and gray Swiss Army backpack. (*Image 1*)



Image 1: Verdun near the National Mall on January 6, 2021.

9.  Following the rally, Verdun travelled with the crowd to the United States Capitol. Once he arrived at the Capitol, Verdun observed the developing riot and confrontations between law enforcement and police officers. Verdun avoided the confrontations he observed but proceeded onto Capitol grounds, eventually reaching the Capitol's Upper West Terrace. From the Upper West Terrace, Verdun entered the Capitol building with other people through the Senate Wing Doors at approximately 2:25 PM. (*Image 2*) Rioters violently breached the Senate Wing Doors approximately 10 minutes before Verdun's arrival. No authorized person, including police officers, allowed Verdun to enter the Capitol at this location.

4



*Image 2: Verdun – circled in yellow – entering the Capitol.*

10. Once inside the Capitol, Verdun turned right and followed other people to the Capitol Crypt, where he remained for approximately 5 minutes. Following his time in the Crypt, Verdun returned to the Senate Wing Corridor as police officers attempted to direct Verdun and other people out of the Capitol. (*Image 3*) Verdun eventually exited the Capitol through a broken window approximately 10 minutes after he initially entered at 2:35 p.m.



*Image 3: Police officers funneling Verdun and other rioters out of the Capitol.*

11. However, Verdun did not leave Capitol grounds after this initial exit. Instead, Verdun remained on the Upper West Terrace where rioters violently breach a fire door on the

Upper West Terrace (known as the Parliamentarian Door) at 2:42 p.m., minutes after – and adjacent to – Verdun's initial exit from the Capitol through a Senate Wing window. Despite observing the ensuing chaos and ongoing riot, Verdun entered the Capitol a second time through the Parliamentarian Door at approximately 2:58 PM. (*Image 4*)



*Image 4: Verdun entering the Capitol for the second time.*

12.     Verdun remained in the Capitol for several minutes where he recorded the actions of other individuals with his phone. At approximately 3:00 PM, officers began removing these individuals, including Verdun, from the Capitol by forcefully pushing the mob through the Brumidi Corridor – out the fire doors – to the Upper West Terrace. (*Image 5*) Shortly thereafter, Verdun left the Capitol, as law enforcement officers were attempting to clear the Capitol.

6



*Image 5: Verdun crowded with the mob as officers physically removed the mob from the Brumidi Corridor.*

### Elements of the Offense

13. The parties agree that 40 USC **§ 5104(e)(2)(D)** requires the following elements:

    a. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

    b. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

    c. The defendant acted willfully and knowingly.

14. The parties agree that **§ 5104(e)(2)(G)** requires the following elements:

    a. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

    b. The defendant acted willfully and knowingly.

### Defendant's Acknowledgments

15. The defendant, Randy Verdun Sr., knowingly and voluntarily admits to all the elements as set forth above. Specifically, Verdun admits that his conduct of entering restricted

7

Capitol grounds during an ongoing riot and entering the Capitol on two separate occasions during this riot was disorderly and disruptive and completed to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress. Additionally, Verdun acknowledges that he knowingly paraded, demonstrated, or picketed inside the Capitol after he entered the Capitol and remained inside the Capitol with other rioters.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar No. 481052

    /s/ *Eli Ross*
    by: Eli Ross
    Assistant United States Attorney
    Illinois Bar Number 6321411
    United States Attorney's Office
    601 D. Street, N.W.
    Washington, D.C. 20001
    Telephone: (202) 297-1515
    Email: Eli.Ross@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Randy Verdun Sr., have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/10/2024

Randy Verdun Sr.
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7-16-24

John McLindon
Attorney for Defendant